[Cite as *State v. Hiles*, 2021-Ohio-1622.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  14-20-21

    v.

TODD P. HILES,                          O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 2019-CR-0232

Judgment Affirmed

Date of Decision:   May 10, 2021

APPEARANCES:

    *Alison Boggs* for Appellant

    *Raymond Kelly Hamilton* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Todd P. Hiles, appeals the August 20, 2020 judgment of sentence of the Union County Court of Common Pleas. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶2} On September 8, 2019, officers from the Marysville Division of Police responded to a call of an unresponsive female at a Super 8 Motel located in Marysville, Ohio. When the officers arrived, they found 26-year-old Samantha Evans deceased in Hiles's hotel room. It was later determined that Evans had died of a drug overdose. During the ensuing investigation, Hiles provided investigators with untrue, misleading, and conflicting information. Despite Hiles's lack of candor, the investigation revealed that Hiles had provided Evans with the drugs that ultimately resulted in her death. Investigators also discovered Hiles had deleted text messages pertinent to the investigation of Evans's death and that he had removed drug paraphernalia from the hotel room and disposed of it.

{¶3} On October 10, 2019, the Union County Grand Jury indicted Hiles on three counts in case number 2019-CR-0232: Counts One and Two of tampering with evidence in violation of R.C. 2921.12(A)(1), third-degree felonies, and Count Three of obstructing justice in violation of R.C. 2921.32(A)(5), a fifth-degree

felony. On October 18, 2019, Hiles appeared for arraignment and pleaded not guilty to the counts of the indictment.

{¶4} On November 22, 2019, the Union County Grand Jury indicted Hiles on five additional charges in case number 2019-CR-0264: Count One of involuntary manslaughter in violation of R.C. 2903.04(A), a first-degree felony; Count Two of corrupting another with drugs in violation of R.C. 2925.02(A)(3), a second-degree felony; Count Three of trafficking in heroin in violation of R.C. 2925.03(A)(1), a fifth-degree felony; Count Four of trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(1), a fifth-degree felony; and Count Five of trafficking in cocaine in violation of R.C. 2925.03(A)(1), a fifth-degree felony. Hiles initially pleaded not guilty to these charges.

{¶5} On November 27, 2019, the State filed a motion to consolidate case number 2019-CR-0264 with case number 2019-CR-0232. On December 3, 2019, the trial court granted the State's motion. Counts One through Five of the indictment in case number 2019-CR-0264 were renumbered as Counts Four through Eight, respectively, and the matter proceeded under case number 2019-CR-0232.

{¶6} A change of plea hearing was held on June 29, 2020, at which time Hiles pleaded guilty to the charges of obstructing justice, involuntary manslaughter, and trafficking in a fentanyl-related compound. In exchange for Hiles's guilty pleas, the State agreed to request dismissal of all remaining charges. The trial court

accepted Hiles's pleas and entered findings of guilty to the three charges. Furthermore, the trial court dismissed the remaining charges pursuant to the State's request. The matter was continued for the preparation of a pre-sentence investigation report ("PSI").

{¶7} The sentencing hearing was held on August 20, 2020. The trial court determined the involuntary manslaughter charge and the trafficking in a fentanyl-related compound charge merged for purposes of sentencing. The State elected to have the trial court sentence Hiles on the involuntary manslaughter conviction. The trial court sentenced Hiles to a definite term of 12 months in prison on the obstructing justice charge and an indefinite term of 8-12 years in prison on the involuntary manslaughter charge. The trial court ordered the sentences to be served consecutively for an aggregate term of 9-13 years in prison. The trial court filed its judgment entry of sentence on August 20, 2020.

## II. Issues Raised on Appeal

{¶8} On September 18, 2020, Hiles timely filed a notice of appeal asserting one assignment of error:

> **The trial court failed to properly consider and weigh the sentencing factors found in Ohio Revised Code Section 2929.12, creating a sentence that is not supported by the record and contrary to law.**

{¶9} In his assignment of error, Hiles argues the trial court erred by sentencing him to an aggregate term of 9-13 years in prison. Although Hiles raises

only one assignment of error, he makes several distinct arguments in support thereof. First, Hiles argues his indefinite sentence of 8-12 years in prison for involuntary manslaughter is contrary to law because the trial court did not have the power to sentence him to an indefinite prison term for that offense. He maintains that under the Reagan Tokes Law, an indefinite sentence is authorized only when a felony is a "qualifying felony of the first or second degree," and involuntary manslaughter is not a qualifying first-degree felony. Furthermore, Hiles contends that even if the trial court did not err by sentencing him to 8-12 years in prison for involuntary manslaughter, the trial court did err by running that sentence consecutively to his 12-month sentence for obstructing justice. He appears to claim that in electing to run the two sentences consecutively, the trial court failed to give proper consideration to the sentencing criteria of R.C. 2929.11 and 2929.12. Hiles also argues the trial court's R.C. 2929.14(C)(4) consecutive-sentence findings are unsupported by the record.[1]

### III. Discussion

### A. Standard of Review for Felony Sentences

{¶10} Under R.C. 2953.08(G)(2), an appellate court may reverse a sentence "only if it determines by clear and convincing evidence that the record does not

---

[1] As yet another alternative ground for reversing his sentence, Hiles argues the length of his sentence is "disproportionate to the offense and is not consistent to the sentencing of similar defendants in Union County." However, Hiles failed to raise this issue before the trial court, and as a result, he has waived this argument on appeal. *See State v. Boroff*, 3d Dist. Putnam No. 12-20-02, 2020-Ohio-5376, ¶ 16.

support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

## B. The Reagan Tokes Law and Qualifying First- or Second-Degree Felonies

{¶11} The Reagan Tokes Law "'significantly altered the sentencing structure for many of Ohio's most serious felonies[.]'" *State v. Polley*, 6th Dist. Ottawa No. OT-19-039, 2020-Ohio-3213, ¶ 5, fn. 1, quoting The Ohio Criminal Sentencing Commission, *SB 201-The Reagan Tokes Law Indefinite Sentencing Quick Reference Guide*, July 2019. Under the Reagan Tokes Law, a court sentencing an offender to prison for certain first- or second-degree felonies must impose an indefinite, non-life prison term comprising a stated minimum term and a maximum term. R.C. 2929.14(A)(1)(a), (A)(2)(a); R.C. 2929.144. The stated minimum term is selected from a range of prison terms set forth in R.C. 2929.14(A), which varies depending on whether the offense is a first- or second-degree felony. The maximum prison term for a "qualifying felony of the first or second degree" is determined from formulas set forth in R.C. 2929.144. When an offender is sentenced to a non-life felony indefinite prison term, there is a presumption of release upon expiration of

the offender's minimum prison term. R.C. 2967.271(B). However, "[b]ased on [the offender's] conduct while incarcerated, the institution may rebut the presumption in favor of the minimum prison term and extend an offender's incarceration up to the maximum prison term." *State v. Velliquette*, 6th Dist. Lucas No. L-19-1232, 2020-Ohio-4855, ¶ 28.

{¶12} The specific issue in this case is whether first-degree felony involuntary manslaughter is a qualifying felony of the first degree as that term is defined by the Reagan Tokes Law. Hiles maintains that first-degree felony involuntary manslaughter is not a qualifying felony of the first degree and that, consequently, the indefinite sentencing provisions of the Reagan Tokes Law do not apply. Hiles argues that because the indefinite sentencing provisions do not apply to his conviction for first-degree felony involuntary manslaughter, his 8-12 year prison sentence for that offense is contrary to law.

{¶13} As the sole basis for his contention, Hiles cites to R.C. 2901.011, which he claims lists the felonies that are qualifying felonies of the first or second degree. R.C. 2901.011 states in its entirety:

> The amendments to sections 109.42, 121.22, 149.43, 2903.06, 2903.08, 2903.11, 2903.12, 2905.01, 2905.32, 2907.02, 2907.03, 2907.05, 2907.07, 2919.22, 2919.25, 2921.321, 2921.36, 2923.132, 2925.01, 2925.02, 2925.03, 2925.04, 2925.041, 2925.11, 2929.01, 2929.14, 2929.142, 2929.15, 2929.19, 2929.191, 2929.20, 2929.61, 2930.16, 2943.032, 2953.08, 2967.01, 2967.021, 2967.03, 2967.13, 2967.19, 2967.191, 2967.193, 2967.26, 2967.28, 2971.03, 3719.99, 5120.021, 5120.53, 5120.66, and 5120.80 *and* the enactment of

> sections 2901.011, <u>2929.144</u>, 2967.271, and 5120.038 of the Revised Code by S.B. 201 of the 132nd general assembly constitute the Reagan Tokes Law.

(Emphasis added). Hiles claims that by omitting R.C. 2903.04, the statute defining the offense of involuntary manslaughter, from the list of amended statutes, the Ohio Legislature indicated that first-degree felony involuntary manslaughter is not a qualifying first-degree felony to which the indefinite sentencing provisions apply.

{¶14} However, in making this argument, Hiles overlooks the fact that in R.C. 2901.011, the Ohio Legislature defined the Reagan Tokes Law as constituting all of the amended statutes listed in R.C. 2901.011 *and* four newly-enacted statutes, one of which is R.C. 2929.144. Unlike R.C. 2901.011, R.C. 2929.144 contains an explicit definition of the term "qualifying felony of the first or second degree." In fact, other than R.C. 2929.144, there appears to be no statute in the Ohio Revised Code that uses, much less defines, the term. As defined in R.C. 2929.144, a "'qualifying felony of the first or second degree' means a felony of the first or second degree committed on or after the effective date of this section." R.C. 2929.144(A). The effective date of R.C. 2929.144, and of the Reagan Tokes Law generally, is March 22, 2019. Thus, per the sole express statutory definition, all first- or second-degree felonies committed on or after March 22, 2019, are qualifying felonies to which the Reagan Tokes Law applies.[2]

---

[2] Another qualification to this definition is that qualifying felonies of the first or second degree are felonies that are not subject to a sentence of life imprisonment. *See* R.C. 2929.14(A).

{¶15} R.C. 2929.14, which is one of the many statutes amended by the Reagan Tokes Law, reinforces R.C. 2929.144(A)'s definition of a "qualifying felony of the first or second degree." Specifically, R.C. 2929.14(A)(1)(a), the division under which Hiles was sentenced, states:

> For a felony of the first degree *committed on or after the effective date of this amendment*, the prison term shall be an indefinite prison term with a stated minimum term selected by the court of three, four, five, six, seven, eight, nine, ten, or eleven years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code, except that if the section that criminalizes the conduct constituting the felony specifies a different minimum term or penalty for the offense, the specific language of that section shall control in determining the minimum term or otherwise sentencing the offender but the minimum term or sentence imposed under that specific language shall be considered for purposes of the Revised Code as if it had been imposed under this division.

(Emphasis added.)

{¶16} Based on the foregoing, we find Hiles's reliance on R.C. 2901.011 to be misplaced, as Hiles fails to consider the other statutes that make up the Reagan Tokes Law. R.C. 2901.011 simply delineates what amended and newly-enacted statutes comprise the Reagan Tokes Law. Unlike R.C. 2929.144, R.C. 2901.011 contains no operative language defining a qualifying first- or second-degree felony. Furthermore, reading R.C. 2929.144 and 2929.14(A) together, it is clear the defining characteristic of a qualifying first- or second-degree felony is not its inclusion in R.C. 2901.011's list of amended and newly-enacted statutes. Instead, an offense's

status as a qualifying first- or second-degree felony turns on whether the offense was committed on or after March 22, 2019.

{¶17} There is no dispute Hiles's involuntary-manslaughter conviction is a first-degree felony and the offense was committed after March 22, 2019. Accordingly, under the plain language of R.C. 2929.144(A), Hiles's conviction for first-degree felony involuntary manslaughter is a qualifying first-degree felony subject to indefinite sentencing under R.C. 2929.14(A)(1)(a). Because Hiles's involuntary-manslaughter conviction is subject to the indefinite sentencing provisions of the Reagan Tokes Law, we conclude his 8-12 year prison term for that offense is not contrary to law.

**C. Consecutive Sentences**

{¶18} Hiles also contends the trial court erred by ordering him to serve his 12-month sentence for obstructing justice consecutively to his 8-12 year sentence for involuntary manslaughter. Initially, Hiles appears to argue his consecutive sentences are unsupported by the record or otherwise contrary to law because the trial court did not properly balance R.C. 2929.12's seriousness and recidivism factors or give appropriate consideration to the purposes and principles of felony sentencing contained in R.C. 2929.11. However, insofar as Hiles attempts to argue that his consecutive sentences are not supported by the record under R.C. 2929.11 and 2929.12, the Supreme Court of Ohio has clarified that R.C. 2929.11 and 2929.12

do not apply to consecutive-sentencing review. *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, ¶ 17. Accordingly, we do not review Hiles's consecutive sentences for compliance with R.C. 2929.11 and 2929.12. *See id.* at ¶ 17-18; *see also State v. Jones*, ___ Ohio St.3d ___, 2020-Ohio-6729, ¶ 28-29, 39.

{¶19} Hiles raises a second argument in his challenge to the trial court's decision to impose consecutive sentences. Hiles maintains the record does not support the trial court's decision to impose consecutive sentences because the record does not support the trial court's R.C. 2929.14(C)(4) consecutive-sentence findings. Hiles's second argument is proper as R.C. 2953.08(G)(2)(a) expressly allows for appellate review of a trial court's findings under R.C. 2929.14(C)(4).

{¶20} "Except as provided in * * * [R.C. 2929.14(C)], * * * a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). R.C. 2929.14(C) provides, in relevant part:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

-11-

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to [R.C. 2929.16, 2929.17, or 2929.18], or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4). "R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record before imposing consecutive sentences." *State v. Nienberg*, 3d Dist. Putnam Nos. 12-16-15 and 12-16-16, 2017-Ohio-2920, ¶ 17. "Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies." *Id.*

{¶21} When imposing consecutive sentences, the trial court must make the findings required by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 29, 37. In complying with this requirement, the trial court "has no obligation to state reasons to support its findings." *Id.* at ¶ 37. "[P]rovided that the

necessary findings can be found in the record and are incorporated into the sentencing entry," a trial court need not recite a "talismanic incantation" of the language of R.C. 2929.14(C)(4) to properly impose consecutive sentences. *Id.*

{¶22} The record in this case reflects the trial court made the findings required by R.C. 2929.14(C)(4) at the sentencing hearing and the trial court incorporated those findings into its sentencing entry. Hiles does not dispute that the necessary findings were made. Furthermore, Hiles does not attack the trial court's finding that consecutive sentences are necessary to protect the public or to punish him. Nor does he seriously challenge the trial court's finding that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public. Although Hiles concludes that "consecutive sentences are disproportionate to his conduct" and that "the length of [his] sentence is disproportionate to the offense," he offers little in the way of specific references to the record to support these conclusions.

{¶23} Instead, Hiles's arguments are mostly directed toward challenging the trial court's finding under R.C. 2929.14(C)(4)(c) that his history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime. Hiles acknowledges he has a criminal history. Indeed, the PSI reflects that from February 1996 through August 1996, when Hiles was 18 years old, Hiles was charged with a combination of 17 felonies and misdemeanors. These included

charges for theft, grand theft, burglary, vandalism, and aggravated menacing, some of which were felonies of the second or third degree. Although many of these charges were dismissed, Hiles was ultimately convicted on five of these charges and sentenced to an aggregate term of 3 years in prison. The PSI reflects Hiles was released from prison in 1999 and he did not commit any serious criminal infractions for the next 6½ years. However, in August 2006, Hiles was found guilty of one count of first-degree misdemeanor theft and sentenced to 2 years' probation. Hiles's probation was terminated successfully in May 2008. While Hiles apparently lived a mostly law-abiding life for the next 10 years, he was charged with fifth-degree felony theft in October 2018, though that charge was later dismissed. Finally, the PSI reflects Hiles admitted to using illegal substances throughout his life.

{¶24} Hiles concedes his history of criminal conduct, but argues it does not support the imposition of consecutive sentences because he had "a considerable amount of time when he was a law-abiding citizen." He faults the trial court for "reach[ing] way back in [his] history to declare he has a criminal history that requires an excessive sentence to protect the public." Hiles maintains that by using "antiquated" convictions to support findings under R.C. 2929.14(C)(4)(c), anyone who commits a criminal offense but who "straightens up and lives a law-abiding life for a quarter of a century will never get the benefit of that significant period of lawful living when there is a possibility of a court ordering consecutive sentences."

**{¶25}** Notwithstanding Hiles's arguments, we cannot clearly and convincingly find that the trial court's R.C. 2929.14(C)(4)(c) findings are unsupported by the record. Admittedly, Hiles's history of criminal conduct consists principally of conduct that occurred over the span of several months when he was 18 years old, and following his release from prison in 1999, he lived a largely law-abiding life for a number of years. Nevertheless, R.C. 2929.14(C)(4)(c) does not contain any temporal limitation prohibiting a trial court from considering an offender's history of criminal conduct once that history achieves a certain age. *State v. Fyffe*, 2d Dist. Greene No. 2016-CA-14, 2018-Ohio-112, ¶ 41-42. Depending on the facts of a particular case, even a "substantial time gap" in the offender's criminal conduct will not preclude the imposition of consecutive sentences under R.C. 2929.14(C)(4)(c). *Id.* at ¶ 39-44.

**{¶26}** Although this case might be a closer call if Hiles's history of criminal conduct were limited to the offenses he committed in 1996, Hiles's argument fails to account for the fact that he did not lead an entirely law-abiding life in the intervening years. Hiles was convicted of a first-degree misdemeanor in 2006 and charged with a fifth-degree felony in 2018, less than a year before he committed the instant offenses. We recognize that the 2018 fifth-degree felony charge was dismissed, but by referring to the offender's history of criminal *conduct*, R.C. 2929.14(C)(4)(c) "does not limit the trial court's review to an offender's history of

criminal *convictions*." (Emphasis sic.) *State v. Russell*, 11th Dist. Lake No. 2019-L-138, 2020-Ohio-3243, ¶ 140; *see State v. Steele*, 8th Dist. Cuyahoga No. 105085, 2017-Ohio-7605, ¶ 13-17. Furthermore, "it is settled law that a sentencing judge can take into account facts relating to other charges, even charges that have been dismissed or which resulted in an acquittal." *State v. Esmail*, 7th Dist. Columbiana No. 13 CO 35, 2014-Ohio-2297, ¶ 11; *Steele* at ¶ 10. In light of Hiles's substantial early-life criminal conduct and the more recent instances of his criminal conduct, we cannot clearly and convincingly find that the trial court's R.C. 2929.14(C)(4)(c) findings are unsupported by the record.

{¶27} In sum, the trial court made the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences and incorporated those findings into its sentencing entry. In addition, the trial court's R.C. 2929.14(C)(4) findings are not clearly and convincingly unsupported by the record. Therefore, we conclude that there is not clear and convincing evidence that Hiles's consecutive sentences are unsupported by the record or otherwise contrary to law.

{¶28} Hiles's assignment of error is overruled.

### IV. Conclusion

{¶29} For the foregoing reasons, Hiles's sole assignment of error is overruled. Having found no error prejudicial to the appellant herein in the

particulars assigned and argued, we affirm the judgment of sentence of the Union County Court of Common Pleas.

**_Judgment Affirmed_**

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**