[Cite as *State v. Abston*, 2022-Ohio-884.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                   CASE NO. 7-21-04

    v.

TYLER R. ABSTON,                        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Henry County Common Pleas Court
Trial Court No. 2019 CR 0153

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   March 21, 2022

APPEARANCES:

    *Nathan VanDenBerghe* for Appellant

    *Gwen Howe-Gebers* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Tyler Abston ("Abston"), brings this appeal from the July 26, 2021, judgment of the Henry County Common Pleas Court sentencing him to an indefinite prison term of 8 years minimum to a maximum 12 years after Abston plead guilty to, and was convicted of, Engaging in a Pattern of Corrupt Activity in violation of R.C. 2923.32(A)(1), a first degree felony, two counts of Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(1), both first degree felonies, and Trafficking in Heroin in violation of R.C. 2925.03(A)(1), a first degree felony. On appeal, Abston argues that his pleas were not knowing and voluntary, that he received ineffective assistance of counsel, that the Reagan Tokes Law is unconstitutional, that the trial court's forfeiture order in the absence of a forfeiture specification was erroneous, and that the trial court erred by failing to *sua sponte* consider a letter Abston sent to the court as a motion to withdraw his pleas.

*Background*

{¶2} On November 27, 2019, Abston was indicted for Engaging in a Pattern of Corrupt Activity in violation of R.C. 2923.32(A)(1), a first degree felony (Count 1); Trafficking in a Fentanyl-Related Compound in violation of R.C. 2925.03(A)(1), a second degree felony (Count 2); Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(1), a first degree felony (Count 3); Trafficking in a Fentanyl-Related Compound in violation of R.C. 2925.03(A)(1), a second degree felony

(Count 4); Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(1), a first degree felony (Count 5); Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(1), a first degree felony (Count 6); Trafficking in Heroin in violation of R.C. 2925.03(A)(1), a first degree felony (Count 7); Trafficking in a Fentanyl-Related Compound in violation of R.C. 2925.03(A)(1), a fourth degree felony (Count 8); and Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(1), a second degree felony (Count 9). The drug transactions allegedly occurred on various dates from September 12, 2019, to October 22, 2019.[1] Abston originally pled not guilty to the charges.

{¶3} A lengthy pretrial process ensued wherein Abston replaced three attorneys, some retained, some appointed. He repeatedly waived his right to speedy trial as his attorneys prepared the case and engaged in motion practice.

{¶4} On June 8, 2021, Abston entered into a written, negotiated guilty plea wherein he agreed to plead guilty to Counts 1, 3, 6, and 7 of the indictment. In exchange, the State agreed to dismiss the remaining charges and recommend an aggregate 8 year minimum mandatory prison term at sentencing with an indefinite maximum term of 12 years. The written plea agreement was signed by Abston, his attorney, the prosecutor, and the trial judge.

---

[1] Some transactions allegedly involved fifty times the bulk amount of methamphetamines, but less than one-hundred times bulk amount, others involved fifty times the bulk amount of heroin, but less than one hundred times bulk amount. Overall there were multiple allegations of sales of over one-hundred fifty grams of methamphetamine and multiple sales of greater than ten grams of fentanyl.

{¶5} A change-of-plea hearing was held wherein the trial court determined that Abston was entering knowing, intelligent, and voluntary guilty pleas. The trial court accepted Abston's pleas, found him guilty of Counts 1, 3, 6, and 7 of the indictment and set the matter for sentencing.

{¶6} On July 26, 2021, the case proceeded to sentencing wherein the trial court sentenced Abston to the recommended mandatory prison term: 8 years minimum to a maximum 12 years.[2] A judgment entry memorializing Abston's sentence was filed that same day. It is from this judgment that Abston appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Appellant did not receive effective assistance of counsel which caused Appellant to enter a plea that was not knowing and voluntary and trial counsel failed to object to the constitutional validity of Reagan Tokes.**

**Assignment of Error No. 2**
**Appellant's plea was not knowing and voluntary.**

**Assignment of Error No. 3**
**The Reagan Tokes Act is an Unconstitutional Violation of Due Process.**

**Assignment of Error No. 4**
**The forfeiture order was plain error where the indictment did not contain the required specification.**

---

[2] Abston was sentenced to a minimum indefinite prison term of 8 years to a maximum 12 years on each count, concurrently with each other.

**Assignment of Error No. 5**
**The Trial Court erred when it did not consider Appellant's July 2, 2021 letter as a motion to withdraw his guilty pleas and set the matter for a hearing[.]**

{¶7} For ease of discussion, we elect to address the assignments of error out of the order in which they are raised.

*Second Assignment of Error*

{¶8} In his second assignment of error, Abston argues that his guilty pleas were not knowing and voluntary. Specifically, Abston contends that at the beginning of the change-of-plea hearing, both Abston and his attorney expressed confusion about the fact that Abston would be entering guilty pleas rather than no-contest pleas.

Review of a Plea

{¶9} "Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, ¶ 10. "If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional." *Id.*

{¶10} Crim.R. 11, which outlines the procedures that trial courts must follow when accepting pleas, "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *Id.* at ¶

11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975).  Crim.R. 11(C), which applies specifically to a trial court's acceptance of pleas in felony cases, provides in relevant part as follows:

> **(2)   In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally * * * and doing all of the following:**
>
> **(a)   Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.**
>
> **(b)   Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.**
>
> **(c)   Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.**

Crim.R. 11(C)(2)(a)-(c).

{¶11} "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error."  *Dangler* at ¶ 13. However, in the criminal-plea context, the Supreme Court of Ohio has carved out

two limited exceptions to the prejudice component of the traditional rule. *Id.* at ¶ 14-15. First, when a trial court fails to explain the constitutional rights listed in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty or no contest, it is presumed that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required. *Id.* at ¶ 14. Second, "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Emphasis sic.) *Id.* at ¶ 15. "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16.

Analysis

**{¶12}** In this case Abston does not argue that the trial court failed to comply with any specific provision of Crim.R. 11(C); rather, he contends generally that at the beginning of the change-of-plea hearing, both Abston and his counsel expressed some confusion regarding whether Abston would enter guilty pleas or no contest pleas. This occurred during the following exchange:

> **[Prosecutor]: Thank you Your Honor. [Yo]ur Honor we have prepared plea papers wherein the defendant will be entering a guilty plea to count one which []is engaging in a pattern of corrupt activity.**
>
> **[Defense Counsel]: I thought no contest.**
>
> **[Prosecutor]: Nuh uh, guilty, guilty. I don't take no contest pleas.**

**[Defense Counsel]: Okay.**

**[Prosecutor]: Does that change it; I don't take a no contest plea.**

**[Defense Counsel]: Okay, I just, when we were going through the paperwork.**

**[Prosecutor]: Nope, it says guilty.**

**[Defense Counsel]: Okay.**

**[Defendant]: I was under the impression…**

**[Prosecutor]: Okay, were [sic] done.**

**[Defense Counsel]: I was under that impression too, but…**

**[Defendant]: I was under the impression it was no contest.**

**THE COURT: Well, where do we stand right now, do the parties need 30 seconds?**

**[Defense Counsel]: Yes sir.**

**THE COURT: Okay, 30 seconds, can you talk here or do you want us to go?**

**[Defense Counsel]: No, that's fine.**

(June 8, 2021, Tr. at 2-4).

{¶13} There is no indication of how much time passed for any discussion.

{¶14} In the very next line of the transcript the trial court asked, "Are we all set?" (*Id*. at 4). Defense counsel responded, "Yes sir." (*Id*.) A full Crim.R. 11 plea hearing was then held wherein Abston repeatedly acknowledged that he understood

the rights he was waiving and repeatedly stated that he wanted to enter guilty pleas. Abston never again expresses any desire to enter no contest pleas.

{¶15} On appeal, Abston now contends that both he and his trial counsel were confused regarding the nature of his plea and that the trial court erred by proceeded with the Crim.R. 11 colloquy without inquiring whether Abston understood the nature of his plea. Further, Abston argues that he signed the written plea agreement before the parties came into court, so he could not have knowingly, intelligently, and voluntarily signed the agreement because of his purported misunderstanding.

{¶16} Contrary to Abston's arguments, the record reflects that following any initial confusion, Abston understood the nature of his plea and the fact that he was entering guilty pleas to the charges. When reviewing the rest of the hearing in its entirety, it becomes clear that the trial court was in full compliance with Crim.R. 11(C).

{¶17} After the above-cited segment wherein the hearing paused so Abston could speak with his attorney, the trial court had the State proceed to recite the plea agreement, including the State's sentencing recommendation. The trial court then addressed Abston directly, beginning by inquiring into his background. Abston was informed of, and indicated he understood, the maximum penalties for the counts to which he was entering guilty pleas. He indicated he was of sound mind and that he

was not under the influence of any drugs or narcotics. Abston indicated he had enough time to consult his attorney, although he said "I mean, just now, yes Your Honor." (*Id.* at 12). However, Abston clarified that he had the opportunity to go over discovery, potential defenses, and potential witnesses with his attorney. He stated that his attorney had answered all of his questions.

{¶18} Each of the four charges to which Abston was pleading guilty were individually read to him by the trial court. The trial court asked Abston each time if Abston understood that by pleading guilty he was making a complete admission that he committed the offense. He responded that he understood.

{¶19} When questioned by the trial court, Abston indicated he understood that by pleading guilty he could be sentenced that day, that by pleading guilty he was waiving his right to have the trial court rule on any pretrial motions, that he was waiving his right to a trial wherein the State had to prove his guilt beyond a reasonable doubt, that he was waiving his right to cross-examine witnesses and waiving his right to bring witnesses in his own defense and have them compelled to testify, and that at a trial he had the right not to testify. Abston again affirmatively indicated that he understood that by pleading guilty he was waiving all of his rights in open court.

{¶20} Abston was also notified that he could lose some civil rights by "pleading guilty" such as his right to own a firearm. When the trial court mentioned

this potential loss of civil rights, Abston asked for further explanation regarding the firearm. Following the trial court's explanation, Abston indicated he understood. He also indicated he understood that by pleading guilty he had a limited right to appeal. Abston never expressed any confusion regarding his guilty pleas or asked any questions regarding them like he did regarding the firearm issue.

{¶21} At this point in the change-of-plea hearing, the written negotiated plea agreement was presented to the trial court. The paperwork itself repeatedly referred to Abston voluntarily entering "guilty" pleas. Abston and his attorney had signed the form before coming into court.

{¶22} Following the lengthy colloquy and the presentation of the written plea agreement, the trial court *again* read each charge individually to Abston and asked Abston how he wished to plead. Abston responded, "Guilty," all four times. (Tr. at 32-33).

{¶23} When reviewing Abston's argument on appeal that his pleas were not knowing and voluntary, it is important to emphasize that that under *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, Abston must establish an error in the trial court proceedings and that he was prejudiced by that error in order to vacate his plea. Here, the trial court complied with all of the constitutional and nonconstitutional requirements of Crim.R. 11. *See State v. Summit*, 3d Dist. Hardin No. 6-21-06, 2021-Ohio-4562, ¶ 11-15. Abston has not established that the trial court omitted

anything at all in the colloquy, much less established any prejudice by the acceptance of his pleas. *Summit* at ¶ 15.

{¶24} In order to vacate Abston's pleas, we would have to ignore the entire discussion between Abston and the trial court that followed his initial confusion, we would have to ignore his signed, written plea agreement, and we would have to ignore Abston's own statements that he understood the nature of his plea and his statement that he wanted to plead guilty. Further, we would have to presume that Abston did not have enough time to speak with his attorney, contrary to Abston's own statements at the hearing, and we would have to presume that Abston was unwilling to voice his concerns or confusion at the hearing despite the fact that he did so on other issues. As an appellate court, we are confined to the record, and the record simply does not establish that Abston's pleas were anything but knowing, intelligent, and voluntary, despite any initial, very brief, confusion by Abston and his attorney. Therefore, Abston's second assignment of error is overruled.

*Fifth Assignment of Error*

{¶25} In his fifth assignment of error, Abston argues that the trial court erred by failing to construe a letter he wrote to the trial court prior to sentencing as a motion to withdraw his guilty pleas.

Analysis

{¶26} At the outset, we note that the letter Abston wrote to the trial court was never docketed and officially introduced into the record. However, we know that the trial court received a letter from Abston because the trial court stated as much at the sentencing hearing.[3] Abston attached the purported letter to his brief, but it is not technically before this Court for review since it is not officially part of the record. *State v. Martin*, 4th Dist. Scioto No. 04CA2946, 2005-Ohio-4059, ¶ 11. Notably, an argument similar to Abston's has been directly rejected in the past due to the fact that the letter was not properly filed and it was not in the form of a motion. *State v. Hill*, 8th Dist. Lorain No. 96CA006548, 1998 WL 65485, *1. Nevertheless, since we know that the trial court received his letter, we will review Abston's argument in the interest of justice.

{¶27} Prior to sentencing, Abston sent a trial court a letter expressing dissatisfaction with his attorney.[4] Despite Abston's evident dissatisfaction with his attorney in his letter, Abston affirmatively indicated at the outset of the sentencing hearing that he wished to proceed with a sentencing hearing *with his current attorney*. In fact, the trial court addressed Abston directly, mentioning the letter and his attorney's motion to withdraw, and said "what I'm hearing from you [Abston]

---

[3] The trial court indicated it had received a letter written by Abston that was addressed to both the trial judge and another judge.

[4] Also prior to the sentencing hearing, Abston's attorney filed a motion to withdraw as counsel.

today is that you wish to withdraw that and proceed to sentencing today, is that correct?" (July 26, 2021, Tr. at 3). Abston responded, "Yes." (*Id.*)

{¶28} Based on Abston's own statement at the sentencing hearing, the record establishes that Abston wished to proceed with the hearing. He expressed no misgivings with his attorney or his pleas. Actually, to the extent he sent a letter to the trial judge, he indicated he wanted to "withdraw that." Under these circumstances, we cannot find that the trial court erred by failing to *sua sponte* consider any letter as a motion to withdraw his guilty pleas and for failing to *sua sponte* hold a hearing on the matter, particularly where Abston directly expressed his desire to proceed with sentencing. *State v. Keiter*, 2d Dist. Montgomery No. 25235, 2013-Ohio-120, ¶ 5. For these reasons, Abston's fifth assignment of error is overruled.

*Third Assignment of Error*

{¶29} In his third assignment of error, Abston argues that the Reagan Tokes Law is an unconstitutional violation of due process.

Standard of Review

{¶30} We review the determination of a statute's constitutionality de novo. *State v. Hudson*, 3d Dist. Marion, 2013-Ohio-647, ¶ 27, citing *Akron v. Callaway*, 9th Dist. Summit, 162 Ohio App.3d 781, 2005-Ohio-4095, ¶ 23 and *Andreyko v. Cincinnati*, 1st Dist. Hamilton, 153 Ohio App.3d 108, 2003-Ohio-

2759, 791 N.E.2d 1025, ¶ 11. "De novo review is independent, without deference to the lower court's decision." *Id.*, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147, 593 N.E.2d 286 (1992).

Analysis

**{¶31}** Abston argues that his indefinite sentence of 8-12 years in prison is unconstitutional because the indefinite sentencing provisions of the Reagan Tokes Law,[5] under which he was sentenced, run afoul of the separation-of-powers doctrine and infringe on his right to due process. At the outset, we note that Abston failed to object to the constitutionality of the Reagan Tokes Law in the trial court. "The '[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.'" *State v. Barnhart*, 3d Dist. Putnam No. 12-20-08, 2021-Ohio-2874, ¶ 7, quoting *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus. "However, we retain the discretion to consider a waived constitutional argument under a plain-error analysis." *Id.* at ¶ 8. "An error qualifies as 'plain error' only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise." *Id.* In this case, we elect to exercise our discretion to review

---

[5] Because we have thoroughly explained these provisions in previous opinions, we need not do so here. *See, e.g.*, *State v. Barnhart*, 3d Dist. Putnam No. 12-20-08, 2021-Ohio-2874, ¶ 9; *State v. Hiles*, 3d Dist. Union No. 14-20-21, 2021-Ohio-1622, ¶ 11-16.

Abston's constitutional arguments for plain error. *See id.* at ¶ 8, 15 (reviewing "waived" challenge to the constitutionality of the Reagan Tokes Law for plain error).

**{¶32}** Abston's challenge does not present a matter of first impression in this Court. Since the indefinite sentencing provisions of the Reagan Tokes Law went into effect in March 2019, we have repeatedly been asked to address the constitutionality of these provisions. We have invariably concluded that the indefinite sentencing provisions of the Reagan Tokes Law do not violate the separation-of-powers doctrine or infringe on defendants' due process rights. *E.g.*, *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 10-11; *State v. Hacker*, 3d Dist. Logan No. 8-20-01, 2020-Ohio-5048, ¶ 22; *State v. Wolfe*, 3d Dist. Union No. 14-21-16, 2022-Ohio-96, ¶ 21.

**{¶33}** In this case, Abston asks us to reconsider our earlier decisions. In recent months, a number of defendants have requested the same of us—requests that we have uniformly rejected. *E.g.*, *Wolfe* at ¶ 22; *Barnhart* at ¶ 12-15; *State v. Mitchell*, 3d Dist. Allen No. 1-21-02, 2021-Ohio-2802, ¶ 17; *State v. Rodriguez*, 3d Dist. Seneca No. 13-20-07, 2021-Ohio-2295, ¶ 15. As Abston has not presented us with any compelling new reason to depart from our earlier precedent, we once again decline to do so. Consequently, we find no plain error in the trial court's decision

to sentence Abston to an indefinite term of 8-12 years in prison consistent with the Reagan Tokes Law. Therefore, his third assignment of error is overruled.

*First Assignment of Error*

{¶34} In Abston's first assignment of error, he argues that he received ineffective assistance of counsel. Specifically, he argues that his counsel was ineffective for failing to communicate with Abston, for "convincing" Abston to enter into a plea agreement, and for deficiently explaining the plea process to Abston. Further, Abston argues that his counsel was ineffective for failing to challenge the constitutionality of the Reagan Tokes Law.

Standard of Review

{¶35} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153 (1988). Therefore, to prevail on a claim of ineffective assistance of counsel, Abston must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989). In other words, Abston must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

Analysis

**{¶36}** We have already determined that the trial court did not err by finding that Abston's pleas were knowing, intelligent, and voluntary. Abston may now claim that he did not have enough time to speak with his attorney, but this is directly contradicted in the dialogue from the plea hearing. Further, the dialogue at the plea hearing established that Abston *did* understand the process and that he *did* desire to change his pleas. Thus we can find no error here and no resulting prejudice.

**{¶37}** As to Abston's claim that his attorney was ineffective for failing to object to the Reagan Tokes Law, we have rejected similar challenges to Reagan Tokes, whether raised or not, thus he cannot establish any error or prejudice on this issue either. *See Barnhart*, *supra*, at ¶ 19. For these reasons, his first assignment of error is overruled.

*Fourth Assignment of Error*

**{¶38}** In his fourth assignment of error, Abston argues that the trial court erred by ordering the "forfeiture" of $13,680 in the absence of a forfeiture specification in the indictment.

Relevant Authority

**{¶39}** Revised Code 2981.02(A)(1)(b) allows for the forfeiture of "[p]roceeds derived from or acquired through the commission of an offense." Generally, "proceeds" are "any property derived directly or indirectly from an

offense," including money. R.C. 2981.01(B)(11)(a). Money derived from a drug transaction can constitute "proceeds." *See State v. McCorkle*, 2d Dist. Greene No. 2020-CA-36, 2021-Ohio-2604, ¶ 15, *appeal not allowed*, 165 Ohio St.3d 1426, 2021-Ohio-3730, ¶ 15. However, in order for such "proceeds" to be forfeited, a defendant has to be convicted of a crime *and* a forfeiture specification "of the type described in section 2941.1417" has to be included in the indictment. R.C. 2981.04(A)(1).

{¶40} Importantly, "'forfeitures are not favored in law and equity, and forfeiture statutes must be interpreted strictly against the [S]tate.'" *State v. Cave*, 4th Dist. Scioto No. 13CA3575, 2015-Ohio-2233, ¶ 40, quoting *State v. Luong,* 12th Dist. Butler No. CA2011-06-101, 2012-Ohio-4519, ¶ 44, citing *State v. King,* 12th Dist. Fayette No. CA2008–10–035, 2009-Ohio-2812, ¶ 12. "The burden is on the state to show that the money has any connection to the underlying criminal offense." *Dayton Police Dept. v. Byrd*, 2d Dist. No. 23551, 189 Ohio App.3d 461, 2010-Ohio-4529, ¶ 10, citing *State v. Ali*, 119 Ohio App.3d 766, 770 (1997). The State "'must demonstrate that it is more probable than not, from all the circumstances, that the defendant used [the money] in the commission of criminal offenses.'" (Citations omitted.) *Id*. quoting *Id*. at 769. The same logic applies regarding sufficient proof that the money was proceeds of the criminal offense. *Id*.

Analysis

**{¶41}** At the sentencing hearing in this matter, the State requested that

$13,680 be "returned and forfeited to the MAN Unit." (July 26, 2021, Tr. at 5).

Specifically, the State argued,

> **there is money that was seized from the defendant as a result of the ongoing case and we had not asked the Court to release any of that yet back to the MAN Unit given his case was still pending so there is $13,680 between this defendant and the co-defendants that were seized. We are asking that that be returned and forfeited back to the MAN Unit.**

(*Id.*)

**{¶42}** Although it was not explained at the sentencing hearing, or at any prior

hearing, the $13,680 the State seems to be referring to was first mentioned in

Abston's indictment. Count 1 of the indictment, Engaging in a Pattern of Corrupt

Activity, listed four drug trafficking incidents Abston was involved with, one of

which was for the amount of $13,680. The indictment alleged that Abston sold "6

ounces of Meth and 3 ounces of Heroin/Fentanyl for $13,680." (Doc. No. 2).

Further, the indictment alleged,

> **Tyler Abston ("ACE") arrived in a car driven by Vicki W[.] The CI gets into the vehicle wherein the money & drugs are exchanged. A felony traffic stop was then conducted at the end of the buy and a safe was also located in the vehicle. The safe, although it did not contain anything, matched the safe from the buy that took place on September 18th, 2019.**

(*Id.*)  There was no forfeiture specification attached to Count 1 of the indictment, or any of the other counts in the indictment.[6]

{¶43} As the case progressed, the $13,680 was not mentioned in any material filed in the docket after the indictment.  Similarly, the $13,680 was not mentioned as part of the written plea agreement and it was not mentioned at the change-of-plea hearing.

{¶44} Despite the lack of any mention of the $13,680 prior to the sentencing hearing, at the sentencing hearing the State requested the $13,680 referenced above that was "seized" from Abston and his co-defendants.  The defense objected to any "restitution" in this matter without a separate, additional hearing[7], but the defense did not specifically make any arguments regarding forfeiture of the $13,680.  Importantly, however, failure to object does not waive any arguments regarding forfeiture on appeal because "forfeiture of property is created by statute," and "forfeitures are disfavored."  *State v. Christian*, 2d Dist. Montgomery No. 25256, 2016-Ohio-516, ¶ 31.

{¶45} Following the State's oral request for "return" or "forfeiture" of the $13,680 at the sentencing hearing, the trial court ordered that the $13,680 seized "shall become the property of * * * [the] MAN Unit."  (*Id*. at 24).  In the trial court's

---

[6] The three other drug trafficking incidents listed under Count 1 of the indictment were for amounts of $1,400, $4,600, and $4,600.

[7] The State was requesting $10,000 in restitution for the costs of the investigation and buy money used.  The trial court denied the request.  Abston was assessed $40,000 in fines in this matter.

judgment entry, the trial court stated, "It is further ORDERED that the * * * ($13,680.00) be *forfeited* to the MAN Unit." (Emphasis added.) (Doc. No. 102).

{¶46} Pursuant to R.C. 2981.04(A)(1), property may be *forfeited* only following a conviction when the charging instrument contains a specification of the type described in R.C. 2941.1417. Thus under the plain wording of the statute, the trial court's "forfeiture" order would be improper here. *See Christian*, *supra*, at ¶ 33.

{¶47} While the trial court's "forfeiture" order would be improper under the statutory authority, the State argues that the trial court's use of the word "forfeited" was merely a misstatement. The State argues that it simply wanted the money used in the controlled drug buys to be "released," not "forfeited," since the money was no longer needed as evidence.[8] Notably, R.C. 2981.01(B)(11)(a) does contain an avenue for the recovery of money that does not meet the definition of forfeiture proceeds outside of the forfeiture framework; however, the statute requires proof that the money was held under clear title by a law enforcement agency, and proof that the money was used to purchase contraband for the purpose of investigating a drug abuse offense.[9]

---

[8] Again, the State did use the word "forfeited" at the sentencing hearing.
[9] Revised Code 2981.01(B)(11) defines proceeds for purposes of forfeiture, and it reads as follows:

> **(11) "Proceeds" means both of the following:**
>
> **(a) In cases involving unlawful goods, services, or activities, "proceeds" means any property derived directly or indirectly from an offense. "Proceeds" may include, but**

{¶48} The first problem with the State's argument that it was seeking "release" of the $13,680 rather than "forfeiture" is that our record contains no information as to exactly how this $13,680 was seized from Abston, *or* even how much of it was seized from *him* rather than his co-defendant(s). It is possible that the $13,680 constituted "proceeds" subject to forfeiture based on the definition of proceeds in R.C. 2981.01(B)(11)(a), and it is also possible that under the same statute the money was clearly the property of the law enforcement agency and was used for the purpose of investigating a drug abuse offense, thus falling outside of the forfeiture framework. We simply are unable to classify the money since no hearing was held and no further information is contained in the record.

---

**is not limited to, money or any other means of exchange. "Proceeds" is not limited to the net gain or profit realized from the offense. "Proceeds" does not include property, including money or other means of exchange, if all of the following apply to that property:**

**(i) It is held under clear title by a law enforcement agency.**

**(ii) It is used or may be used to purchase contraband for the purpose of investigating any drug abuse offense, as defined in section 2925.01 of the Revised Code.**

**(iii) If it is used to purchase contraband under division (B)(11)(a)(ii) of this section, the property continues to be considered the property of the law enforcement agency if the agency establishes a clear chain of custody of it.**

**(b) In cases involving lawful goods or services that are sold or provided in an unlawful manner, "proceeds" means the amount of money or other means of exchange acquired through the illegal transactions resulting in the forfeiture, less the direct costs lawfully incurred in providing the goods or services. The lawful costs deduction does not include any part of the overhead expenses of, or income taxes paid by, the entity providing the goods or services. The alleged offender or delinquent child has the burden to prove that any costs are lawfully incurred.**

{¶49} Notwithstanding this point, and perhaps the more fatal flaw to the State's case, is the fact that a trial court speaks through its judgment entry, and the entry in this case specifically states that the $13,680 is "forfeited." *State v. Brown*, 3d Dist. Allen No. 1-06-66, 2007-Ohio-1761, ¶ 3 ("A trial court speaks only through its journal entries and not by oral pronouncement."). Given the trial court's order that the $13,680 was to be "forfeited," the lack of a forfeiture specification in the indictment, and our lack of a record regarding the $13,680, we are compelled to reverse the trial court's "forfeiture" order and remand this case so that a proper determination regarding the $13,680 can be made. For these reasons, Abston's fourth assignment of error is sustained.

*Conclusion*

{¶50} For the foregoing reasons Abston's first, second, third, and fifth assignments of error are overruled. His fourth assignment of error is sustained. The judgment of the Henry County Common Pleas Court is affirmed in part, and reversed in part. This case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**