[Cite as *State v. Thomas*, 2025-Ohio-1321.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

TRAVON L. THOMAS,

    DEFENDANT-APPELLANT.

CASE NO. 1-24-29

O P I N I O N

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR2022 0051**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision: April 14, 2025**

---

APPEARANCES:

    *Russell Patterson* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

Case No. 1-24-29

**MILLER, J.**

**{¶1}** Defendant-Appellant, Travon L. Thomas ("Thomas"), appeals from the March 26, 2024 Amended Judgment Entry of Sentencing issued by the Allen County Court of Common Pleas, following a five-day jury trial. Thomas argues there was insufficient evidence to support his conviction for aggravated funding of drug trafficking, the trial court erred in admitting evidence of uncharged drug activity, and two offenses should have been merged at sentencing. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Thomas was charged with committing 10 offenses:

1. Aggravated Funding of Drug Trafficking pursuant to R.C. 2925.05(A)(5) and (C)(1), with a major drug offender specification pursuant to R.C. 2941.1410(A) and 2925.05(E);

2. Trafficking in a Fentanyl-Related Compound pursuant to R.C. 2925.03(A)(1) and (C)(9)(f);

3. Trafficking in Cocaine pursuant to R.C. 2925.03(A)(1) and (C)(4)(e);

4. Trafficking in a Fentanyl-Related Compound pursuant to R.C. 2925.03(A)(2) and (C)(9)(h), with a major drug offender specification pursuant to R.C. 2941.1410(B);

5. Trafficking in a Fentanyl-Related Compound pursuant to R.C. 2925.03(A)(2) and (C)(9)(f);

6. Possession of a Fentanyl-Related Compound pursuant to R.C. 2925.11(A) and (C)(11)(e);

7. Trafficking in Heroin pursuant to R.C. 2925.03(A)(1) and (C)(6)(f);

-2-

8. Trafficking in Cocaine pursuant to R.C. 2925.03(A)(1) and (C)(4)(e);

9. Trafficking in Heroin pursuant to R.C. 2925.03(A)(1) and (C)(6)(f); and

10. Engaging in a Pattern of Corrupt Activity pursuant to R.C. 2923.32(A)(1) and (B)(1).[1]

Between February 12 and February 16, 2024, a jury trial took place. During the trial, the State presented evidence of a large-scale drug investigation into Thomas, controlled purchases of illegal narcotics involving a confidential informant, and the production, delivery, and discovery of illegal narcotics.

**{¶2}** Among the witnesses called by the State to testify was Sidney Jackson ("Jackson"), who had known Thomas for several years. Jackson was separately charged as a result of her own involvement in the activities at issue. Jackson testified that she worked with Thomas by preparing illegal drugs for him and transporting them to various people and places as he directed. Jackson communicated with Thomas through an application he had her download on her cell phone called WhatsApp.

**{¶3}** According to Jackson, Thomas contacted her about having her make a trip to Columbus in order to fix a pill press machine used to make illegal pills. Jackson testified that she was supposed to be paid $10,000 by Thomas for that trip. Thomas told Jackson where to go in Columbus and, on April 13, 2021, she traveled

---

[1] The original indictment charged Thomas with twelve counts. Prior to trial, the trial court dismissed two counts from the indictment and re-numbered the last count (engaging in a pattern of corrupt activity) to become Count 10.

there to show a person how to fix the pill press. After showing the person a video on how to fix the machine and him making a quantity of pills, she called Thomas to tell him the pill press was working. Thomas then instructed Jackson to bring back the pills that had been pressed. She took a bag of pills and started driving back home. Before she could make it home, she was stopped by the police, who discovered the pills—which contained fentanyl.

{¶4} Jackson also testified about State's Exhibit 35, a three-ring binder containing printouts of WhatsApp text messages between her and Thomas and a voluminous amount of accompanying unintelligible cellphone data that had been extracted from her phone. Prior to trial, the State had filed a notice pursuant to Evid.R. 404(B) indicating it intended to presented evidence, by way of text messages between Thomas and Jackson, that would outline Jackson's involvement in Thomas' alleged drug operation.[2] The State said that the text messages included conversations related to purchasing possible drug paraphernalia, funds for potential drug activity, and possible drug trafficking. The text messages contained in State's Exhibit 35 were from February 25, 2021 through April 13, 2021—the date on which Jackson had traveled to Columbus. Prior to opening statements, defense counsel objected to the intended use of the evidence identified in the notice, and the trial court heard arguments from the parties on the issue. The trial court decided it would

_____

[2] The text messages were among the evidence provided to defense counsel through the discovery process.

allow the use of text messages between Jackson and Thomas that discussed things related to selling drugs, picking up drugs, or similar types of drug activity. (Trial Tr. at 257). It explained it would allow those conversations in order "to show the knowledge of the defendant and part of the engaging act." (*Id.* at 258).

{¶5} While on the witness stand, Jackson testified about some of the texts between her and Thomas in State's Exhibit 35. A number of them related to Jackson preparing or delivering controlled substances at Thomas's direction. For example, Jackson testified about a text exchange where Thomas told her "84," Jackson responded "Done," and Thomas replied, "Keep a 100 send da rest to jakque." (State's Exhibit 35 at 81-82). Jackson explained at trial that those messages meant that she took 84 blue pills to someone, that person paid her, Thomas allowed her to keep $100 of the payment, and Thomas directed her to give the rest of the payment to Thomas' girlfriend (jakque). As another example, Jackson testified about a text exchange where Thomas told her "Yo take white boi 28 of Vezzo." (*Id*. at 102). Jackson explained at trial that Vezzo was a nickname for a drug, 28 meant 28 grams, and white boi was a person she knew.

{¶6} Many texts related to the order, shipment, and delivery of the pill press. For example, Jackson received a text from Thomas that said, "Go get da money from jj n order it," to which she responded, "Ok." (*Id*. at 131). Jackson explained at trial this exchange meant Thomas told her to go to someone (jj) to get money to order the pill press. Jackson also testified about text messages related to her trip to

Columbus, including Jackson being provided a rental car for the trip, the address where she was supposed to go, and her compensation for the trip. For example, Jackson received a text message from Thomas on the day she was arrested that said, "You can't be tryna make 10 smh," to which Jackson responded: "You lie I'm on it I had to take a nap when I got off cause it was a no sleep night." (*Id*. at 422-423). Jackson testified this meant she was going to make $10,000 by going to Columbus to fix the pill press.

{¶7} At the conclusion of the trial, the jury found Thomas guilty of all ten counts and the specifications. On March 22, 2024, the trial court held a sentencing hearing. Apart from the State's concession that counts five and six merged, the trial court denied defense counsel's requests for various other counts to merge. The trial court then sentenced Thomas to the following terms of imprisonment: 11 to 16.5 years for Count 1; six to nine years for Count 2; six to nine years for Count 3; 11 to 16.5 years for Count 4, along with five years for the specification; five to 7.5 years for Count 5; six to nine years for Count 7; four to six years for Count 8; five to 7.5 years for Count 9; and six to ten years for Count 10. The court also found that various counts would run concurrently with others, for an aggregate prison sentence of 45 years to 50.5 years. This appeal followed.

## II. ASSIGNMENTS OF ERROR

Thomas raises three assignments of error for our review:

**First Assignment of Error**

**The trial court violated Mr. Thomas's due-process rights when it convicted him of aggravated funding of drug trafficking without legally sufficient evidence.**

**Second Assignment of Error**

**The trial court denied Mr. Thomas a fair trial by admitting evidence of uncharged drug activity.**

**Third Assignment of Error**

**The trial court punished Mr. Thomas twice for the same conduct by convicting him of both aggravated funding of drug trafficking and trafficking in a fentanyl-related compound.**

## III. DISCUSSION

### A. First and Third Assignments of Error

{¶8} In the first assignment of error, Thomas argues that his conviction for aggravated funding of drug trafficking (Count 1) was not supported by legally sufficient evidence and, therefore, must be vacated. He specifically argues that the State did not prove elements of the offense and that the indictment failed to include all of the statutorily-necessary elements.

The statute for funding of drug trafficking provides, in relevant part:

No person shall knowingly provide money or other items of value to another person with the purpose that the recipient of the money or items of value use them to obtain any controlled substance for the purpose of violating [R.C. 2925.04 (Illegal manufacture of drugs)] or for the purpose of selling or offering to sell the controlled substance

in the following amount: . . . If the drug to be sold or offered for sale is heroin or a fentanyl-related compound, or a compound, mixture, preparation, or substance containing heroin or a fentanyl-related compound, an amount that equals or exceeds ten unit doses or equals or exceeds one gram.

R.C. 2925.05(A)(5). The offense is a first degree felony if the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana. R.C. 2925.05(C)(1). The alleged controlled substance in Count 1 was fentanyl, a Schedule II drug. Therefore, the State needed to prove—beyond a reasonable doubt—that (1) Thomas knowingly provided money (or other items of value) to another person; (2) with the purpose that the recipient of the money (or other items of value) use it; (3) either (a) for the purpose of illegally manufacturing a controlled substance or otherwise violating R.C. 2925.04, or (b) to obtain a controlled substance for the purpose of selling, or offering to sell, the controlled substance in an amount prohibited by R.C. 2925.05(A)(5). *See* R.C. 2925.05(A)(5); *Ohio Jury Instructions*, CR § 525.05 (Rev. Jan. 5, 2013).

{¶9} In its appellate brief, the State conceded there was no evidence produced at trial proving that Thomas provided any money or items of value to Jackson "or case law that an offer of future money or items of value from the defendant is sufficient evidence to maintain a conviction" for aggravated funding of drug trafficking. (Appellee's Brief at 6). Therefore, the State initially asked this court to "modify the verdict on the first count to a conviction of an *attempt* of R.C. 2925.05(A)(5)." (Emphasis added.) (*Id.* at 7). However, during oral argument the

State also conceded that, if the indictment was flawed by its omission of a necessary element, then the first assignment of error should be sustained.

{¶10} We agree with the State's concessions. Upon review of the trial transcript, we find no evidence that Thomas provided money or other items of value to Jackson. At best, he made a promise for a future payment of money. Further, the indictment against Thomas simply reads: Thomas "did knowingly provide money or other items of value to another person for the purpose of selling or offering to sell a controlled substance and the drug sold or offered for sale was" fentanyl, "a Schedule II drug, and the amount equaled or exceeded ten unit doses or equaled or exceeded one gram." The statute requires more. Specifically, the indictment omitted the second element set forth above, i.e., the money or other items of value were provided "with the purpose that the recipient of the money or items of value use them" for one of the two prohibited actions. R.C. 2925.05(A). Moreover, even if this element had been contained in the indictment, there was no evidence presented at trial to prove Jackson was to use the $10,000 to obtain drugs for the purpose of selling or offering to sell those drugs.

{¶11} Accordingly, we sustain the first assignment of error and remand this matter for the trial court to vacate the conviction on Count 1, Aggravated Funding of Drug Trafficking. *State v. Gideon*, 2020-Ohio-6961, ¶ 29 ("[w]hen a conviction is based on evidence that does not establish a defendant's guilt beyond a reasonable

doubt, the court of appeals must vacate the conviction and double-jeopardy protection bars the defendant's retrial for the same offense").

{¶12} In the third assignment of error, Thomas argues that he was punished twice for the same conduct when he was convicted of both aggravated funding of drug trafficking (Count 1) and trafficking in a fentanyl-related compound (Count 4). However, we find the third assignment of error is moot because of our ruling sustaining the first assignment of error and, therefore, we need not decide the third assignment of error. *See* App.R. 12(A)(1)(c).

### B.     Second Assignment of Error

{¶13} In the second assignment of error, Thomas argues the trial court denied him a fair trial when it allowed the State to introduce evidence of uncharged drug activity to show Thomas' propensity to sell drugs. He specifically points to text messages in State's Exhibit 35 that Jackson testified (or the prosecutor indicated) referred to illegal narcotics transactions, such as "84," "Yo take white boi 28 of Vezzo," "Ok Derrick need one," "When u get back grab dem blues from jmoney it should be 700 anything short he better have da bread for dem he at dar crib," "You sold 500 how much he owe you," "How much vezzo," "How much u take jakque," "2900," and "Yo where dat vezzo at." Thomas argues this evidence was inadmissible evidence of other crimes, wrongs, or acts, pursuant to Evid.R. 404(B), "because it was not relevant to any purpose other than showing that [he] had a propensity to sell drugs." (Appellant's Brief at 13). Thomas asserts that the

messages' admission prejudiced him by confusing the issues before the jury, their probative value was substantially outweighed by the danger they created of unfair prejudice, and the trial court did not properly instruct the jury on how those messages could and could not be used.

{¶14} In response, the State argues the text messages were properly admitted for multiple reasons. First, the State contends the messages showed various elements of the engaging-in-a-pattern-of-corrupt-activity offense. For example, they showed there was an enterprise, participation in the enterprise by Thomas, and Thomas' association with Jackson and others involved with the enterprise. Second, the State contends the messages were evidence of acts inextricably intertwined with the charged offenses, so they were admissible. According to the State, the text messages provided necessary background for the jury to understand the transactions at issue. Third, the State contends the messages were admissible for the permitted purpose under Evid.R. 404(B)(2) of showing Thomas' knowledge, which was also a necessary element for the State to prove at trial.

{¶15} As explained below, we find the trial court did not deny Thomas a fair trial by admitting the text messages.

### 1. Applicable Law

#### a. Rule 404(B)

{¶16} "'A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on

trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime.'" *State v. Hartman*, 2020-Ohio-4440, ¶ 20, quoting *State v. Curry*, 43 Ohio St.2d 66, 68 (1975). "This common-law principle is embodied in Evid.R. 404(B)." *Id.* at ¶ 21. The reason for this rule is that it does not follow from the defendant's past acts that he or she committed the particular crime charged in the present case. *Id.* at ¶ 71.

{¶17} Under Evid.R. 404(B), "[e]vidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evid.R. 404(B)(1). "This type of evidence is commonly referred to as 'propensity evidence' because its purpose is to demonstrate that the accused has a propensity or proclivity to commit the crime in question." *Hartman* at ¶ 21. However, "Evid.R. 404(B) does not contain a blanket prohibition on the introduction of other-acts evidence." *State v. Echols*, 2024-Ohio-5088, ¶ 30. The rule goes on to reference permitted uses of other crimes, wrongs, or acts: "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2). "Though Evid.R. 404(B) lists specific examples of permissible nonpropensity purposes for which other-act evidence may be admitted, its list is not exhaustive." *Echols* at ¶ 31. "The key [to admissibility] is that the evidence must prove something other than the defendant's disposition to commit certain acts." *Hartman* at ¶ 22 ("evidence of

other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue").

**{¶18}** Significantly, not all evidence implicates Evid.R. 404(B). By its "own terms, evidence must meet two criteria to fall within its scope." *Echols* at ¶ 24. First, it must be evidence of a "crime, wrong, or act." *Id.* Second, "it must not be evidence that goes directly to the charged crime itself—rather, it must be evidence of an '*other* crime, wrong or act.'" (Emphasis in original.) *Id.*, quoting Evid.R. 404(B)(1); *see also State v. Moore*, 2025-Ohio-712, ¶ 76 (3d Dist.) (evidence did not fall within scope of Evid.R. 404(B) because it "was direct testimonial evidence of some of the charged offenses," not "evidence of other crimes, wrongs, or acts"). Additionally, evidence of other crimes may be presented when they are so blended or connected with the one on trial that proof of one incidentally involves the other, or explains the circumstances thereof, or tends logically to prove any element of the crime charged. *State v. Roe*, 41 Ohio St.3d 18, 23-24 (1989); *see also State v. Smith*, 49 Ohio St.3d 137, 139 (1990); *State v. Handshoe*, 2023-Ohio-3205, ¶ 22 (3d Dist.) ("Evid.R. 404(B) applies to the admission of 'other acts' extrinsic to the charged offense and not those acts intrinsic to the offense [being tried] because the latter are outside the purview of Evid.R. 404(B)").

**{¶19}** If the evidence falls *within* the scope of Evid.R. 404(B), then the trial court should conduct a three-step analysis in considering the evidence's admissibility. *See State v. Williams*, 2012-Ohio-5695, ¶ 19-20; *Hartman*, 2020-

-13-

Ohio-4440, at ¶ 23-29. That three-step analysis generally includes determining whether the evidence is relevant to the particular purpose for which it is offered; whether it is presented for a legitimate purpose; and whether its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Id.*

### b.    Engaging in a Pattern of Corrupt Activity

**{¶20}** At the outset, we find the evidence Thomas complains of was not evidence of other crimes, wrongs, or acts offered to show he acted in conformity therewith in the instant case, but instead was direct evidence of the crimes charged in the instant case. *State v. Lazzerini*¸ 2021-Ohio-1998, ¶ 42 (5th Dist.). We consider the potentially objectionable text messages in relation to the crimes charged against Thomas, particularly Engaging in a Pattern of Corrupt Activity (Count 10). The criminal statute for that offense provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity . . . ." R.C. 2923.32(A)(1).

**{¶21}** An "enterprise" is defined to include "any individual, sole proprietorship, partnership, . . . or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). Furthermore, an "enterprise" can be either licit or illicit. *Id.* "The statutory scheme does not indicate how the existence of an enterprise is to be

-14-

proved." *State v. Beverly*, 2015-Ohio-219, ¶ 9; *see also State v. Maag*, 2002-Ohio-3953, ¶ 27-28 (3d Dist.) (evidence consisting of drugs, photos of drugs, chain of custody sheets, laboratory results of controlled substances, photos of concealed compartments, and other similar pieces of evidence—none of which directly implicated the defendant—were relevant to showing that the enterprise existed, how it operated, and that it sold and distributed controlled substances—all of which were necessary to the State's case).

**{¶22}** The phrase "pattern of corrupt activity" "means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). "Corrupt activity" "means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in"—among several other things—any violation of R.C. 2925.03 for trafficking in a controlled substance. R.C. 2923.31(I)(2)(c). The drug trafficking statute at R.C. 2925.03 prohibits someone from knowingly selling or offering to sell a controlled substance. R.C. 2925.03(A)(1). It also prohibits someone from knowingly preparing a controlled substance for shipment, transportation, delivery, or distribution when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person. R.C. 2925.03(A)(2). Simply stated, the State must prove the existence of an

-15-

enterprise, two or more incidents of corrupt activity related to the enterprise's affairs, and the defendant's relationship with the enterprise and those incidents.

### 2. Analysis

**{¶23}** We disagree with the overarching premise of Thomas' assignment of error: that the messages discussing uncharged drug transactions came within the scope of Evid.R. 404(B). Instead, we find that this evidence does not constitute "[e]vidence of any other crime, wrong or act" because it is "evidence that goes directly to the charged crime itself," namely engaging in a pattern of corrupt activity (Count 10). Evid.R. 404(B)(1); *Echols*, 2024-Ohio-5088, at ¶ 24; *see also State v. Koval*, 2006-Ohio-5377, ¶ 99 (12th Dist.).

**{¶24}** More specifically, the text messages were relevant evidence related to proving the existence of an enterprise and Thomas' association with that enterprise, whose affairs involved a pattern of corrupt activity.[3] R.C. 2923.32(A)(1); *Beverly*, 2015-Ohio-219, at ¶ 7-9, 16; *State v. Coleman*, 85 Ohio St.3d 129, 140, 1999-Ohio-258 (1999) (trial court properly admitted evidence of defendant's prior drug sales because they tended to prove essential elements of the specification).

**{¶25}** The enterprise here was for illicit purposes. Consequently, proving its existence could not be accomplished by conventional means. *Beverly*, 2015-Ohio-

---

[3] This is true regardless of whether the pattern of corrupt activity actually included the uncharged drug activity. At trial, the prosecutor argued that the pattern of corrupt activity included, but was not limited to, Thomas' participation in four separate controlled drug buys that occurred within the time frame in the indictment and were separately charged as Counts 2, 7, 8, and 9. The prosecutor also referenced the text messages as showing "the pattern" of drug trafficking engaged in by Thomas and Jackson and their association with "this operation" (i.e., the enterprise). (*See* Trial Tr. at 1055-1057).

219, at ¶ 9 ("the existence of an [illicit] enterprise is more difficult to establish [than a licit enterprise] because the enterprise is entirely an 'association in fact,' i.e., a de facto enterprise"). Instead, "'proof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise.'" *Id.* at ¶ 11, quoting *Boyle v. United States*, 556 U.S. 938, 951 (2009); *see also State v. Frato*, 1992 WL 227955, *2 (9th Dist. Sept. 16, 1992) (where defendant was tried for engaging-in-a-pattern-of-corrupt-activity in addition to other crimes, "[e]vidence of a prior sale of stolen merchandise was offered not as evidence of another crime, but rather as evidence of a pattern of this type of corrupt activity"); *Koval*, 2006-Ohio-5377, at ¶ 101-102 (12th Dist.) (evidence of various acts of drug preparation, storage, and shipment—as well as payment for defendant's services—was not barred by Evid.R. 404(B) but was evidence of a pattern of corrupt activity).

**{¶26}** The text messages at issue here tended to prove the existence of an illicit enterprise, which involved at least Thomas and Jackson and their engagement in illegal drug activity. *See Maag*, 2002-Ohio-3953, at ¶ 27-28 (3d Dist.) (drug evidence, despite not directly implicating the defendant, was relevant to showing the enterprise existed, how it operated, and that it sold and distributed controlled substances—all of which were necessary to the State's case). Therefore, the messages were evidence going directly to elements of a charged crime and to the ultimate question presented to the jury on Count 10: did the State prove, beyond a

-17-

reasonable doubt, that Thomas was associated with an enterprise and conducted or participated in the affairs of that enterprise through a pattern of corrupt activity? R.C. 2923.32(A)(1); *State v. Hikec*, 2024-Ohio-1940, ¶ 39 (5th Dist.) (text messages not precluded by Evid.R. 404(B) because they were highly probative of matters submitted to the jury). As such, the text messages fell outside the scope of Evid.R. 404(B), and we reject Thomas' contention that they were inadmissible evidence pursuant to that rule.

**{¶27}** Thomas' second assignment of error is overruled.

## IV. CONCLUSION

**{¶28}** For the foregoing reasons, Thomas' first assignment of error is sustained, his second assignment of error is overruled, and his third assignment of error is moot. Therefore, we affirm, in part, and reverse, in part, the judgment of the Allen County Court of Common Pleas and remand this cause for the trial court to vacate the conviction on Count 1 (Aggravated Funding of Drug Trafficking) and any further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**ZIMMERMAN and EPLEY, J.J., concur.**

**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**

**/jlm**