[Cite as *State v. Allen*, 2026-Ohio-884.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

JALEN ARTHUR-DARNELL ALLEN,

    DEFENDANT-APPELLANT.

CASE NO. 9-25-21

OPINION AND
JUDGMENT ENTRY

Appeal from Marion County Common Pleas Court
General Division
Trial Court No. 24-CR-308

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: March 16, 2026

APPEARANCES:

    *Olivia R. Rancour* for Appellant

    *Allison M. Kesler* for Appellee

Case No. 9-25-21

**WALDICK, J.**

{**¶1**} Defendant-appellant, Jalen Arthur-Darnell Allen ("Allen"), brings this appeal from the June 25, 2025 judgment of the Marion County Common Pleas Court sentencing him to prison after he was convicted by a jury of Engaging in a Pattern of Corrupt Activity and three counts of Trafficking in a Fentanyl-related compound. For the reasons that follow, we affirm in part and reverse in part.

*Background*

{**¶2**} On three different dates in the summer of 2024, the MARMET Drug Task Force utilized a confidential informant ("CI") to make three substantial controlled buys of fentanyl from Allen and Allen's cousin, Jajuan. On each occasion the CI called Jajuan seeking to purchase a significant quantity of fentanyl.

{**¶3**} For the first buy on July 31, 2024, the CI purchased two ounces of fentanyl for $2,800 from Jajuan at a residence in Marion. Allen was at the residence at the time of the sale but the CI did not know who he was yet. For the second and third drug buys, the CI called Jajuan and Jajuan was out of town but he directed the CI to meet with his "cousin," Allen, to exchange money for fentanyl. Allen sold the CI an ounce of fentanyl on August 9, 2024, for $1400, then another ounce of fentanyl on August 21, 2024 for $1,820. When Allen was arrested on August 23, 2024, $1,720 of the "buy money" from the most recent controlled buy was found on his person.

**{¶4}** As a result of the incidents, Allen was indicted for the following crimes: Engaging in a Pattern of Corrupt Activity in violation of R.C. 2923.32(A)(1), a first degree felony (Count 1); three counts of Trafficking in a Fentanyl-related compound in violation of R.C. 2925.03(A)(1), all first degree felonies (Counts 2, 4, and 6); and three counts of Possession of a Fentanyl-related compound in violation of R.C. 2925.11(A), all first degree felonies (Counts 3, 5, and 7). All counts against Allen were originally indicted with specifications seeking forfeiture of $9,118.31 pursuant to R.C. 2941.1417(A). Jajuan was separately indicted for the same crimes.

**{¶5}** On February 24, 2025, the State filed a motion to join the case against Allen with the case against Jajuan for trial. The State's motion was granted and the cases were joined for trial.

**{¶6}** A three-day jury trial was held May 19-21, 2025. The CI testified at trial regarding the controlled drug buys. In addition, numerous law enforcement officers who were involved with the operations testified at trial. Prior to the cases being submitted to the jury, the State dismissed the forfeiture specifications in the indictments against Allen and Jajuan. Ultimately the jury found Allen and Jajuan guilty of all charges.

**{¶7}** On June 24, 2025, the case proceeded to sentencing. The State conceded that the Trafficking charges merged with the Possession charges from each of the controlled buys, and the State elected to proceed to sentencing on the Trafficking charges, in addition to the charge of Engaging in a Pattern of Corrupt Activity. Allen

Case No. 9-25-21

was sentenced to serve an aggregate, indefinite prison term of 15 years to 20 and ½ years. A judgment entry memorializing Allen's sentence was filed June 25, 2025. It is from this judgment that Allen appeals, asserting the following assignments of error for our review.

### First Assignment of Error

**The trial court erred and thereby deprived Appellant of Due Process of Law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution by overruling Appellant's Crim.R. 29 motion for judgment of acquittal, as there was insufficient evidence to support a conviction.**

### Second Assignment of Error

**Appellant's convictions were against the manifest weight of the evidence and thereby violated Due Process of Law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution.**

### Third Assignment of Error

**The trial court committed plain error by imposing a de facto forfeiture over Appellant's seized funds.**

### Fourth Assignment of Error

**The trial court erred in assessing a mandatory fine against Appellant who is indigent and filed the appropriate affidavits prior to sentencing.**

**Fifth Assignment of Error**

**The trial court's imposition of consecutive sentences was contrary to law and failed to include the required proportionality findings under R.C. 2929.14(C)(4).**

*First Assignment of Error*

{¶8} In his first assignment of error, Allen argues that there was insufficient evidence presented to convict him of Engaging in a Pattern of Corrupt Activity and the Trafficking charges.

Standard of Review

{¶9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both functions are reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.); *State*

*v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence.").

Controlling Statutes

**{¶10}** Allen was convicted of Engaging in a Pattern of Corrupt Activity in violation of R.C. 2923.32(A)(1), which reads as follows:

> No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.

**{¶11}** Allen was also convicted of one count of Trafficking in a Fentanyl-related compound in violation of R.C. 2925.03(A)(1)/(C)(9)(g), and two counts of Trafficking in a Fentanyl-related compound in violation of R.C. 2925.03(A)(1)/(C)(9)(f). These statutory provisions read as follows:

> (A) No person shall knowingly do any of the following:
>
> (1) Sell or offer to sell a controlled substance or a controlled substance analog;
>
> . . .
>
> (9) If the drug involved in the violation is a fentanyl-related compound or a compound, mixture, preparation, or substance containing a fentanyl-related compound and division (C)(10)(a) of this section does not apply to the drug involved, whoever violates division (A) of this section is guilty of trafficking in a fentanyl-related compound. The penalty for the offense shall be determined as follows:
>
> . . .

-6-

(f) If the amount of the drug involved equals or exceeds two hundred unit doses but is less than five hundred unit doses or equals or exceeds twenty grams but is less than fifty grams and regardless of whether the offense was committed in the vicinity of a school, in the vicinity of a juvenile, or in the vicinity of a substance addiction services provider or a recovering addict, trafficking in a fentanyl-related compound is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

(g) If the amount of the drug involved equals or exceeds five hundred unit doses but is less than one thousand unit doses or equals or exceeds fifty grams but is less than one hundred grams and regardless of whether the offense was committed in the vicinity of a school, in the vicinity of a juvenile, or in the vicinity of a substance addiction services provider or a recovering addict, trafficking in a fentanyl-related compound is a felony of the first degree, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.

Evidence Presented

**{¶12}** The State presented evidence of three separate controlled drug buys in this case occurring over approximately three weeks in the summer of 2024. The controlled buys were conducted by the MARMET Drug Task Force utilizing a CI who had a connection to Allen's cousin, Jajuan. The CI had known Jajuan for years.

**{¶13}** On July 31, 2024, the CI contacted Jajuan seeking to purchase two ounces of fentanyl for $2,800.[1] Jajuan indicated he "had his people waiting." (Tr. at 249). Jajuan directed the CI to meet at a residence on Van Atta Avenue in Marion

---

[1] To be specific, the CI testified that she requested "two zips" of "fetty," which she testified was two ounces of fentanyl.

to make the purchase. The CI was provided with audio/visual recording equipment and documented buy-money. She was also searched before and after the purchase.

{¶14} When the CI arrived at the residence, she was greeted by a person she did not know at the time, but would later learn was Allen. The CI used the bathroom at the residence and when she came out she eventually met Jajuan and purchased 58.16 grams of a fentanyl-related compound for $2,800. The CI asked about potentially purchasing a large quantity of methamphetamines and Jajuan indicated that Allen could acquire the methamphetamines for her.

{¶15} Law enforcement officers were tracking Jajuan's vehicle, and they knew he was in Detroit, Michigan on August 9, 2024. Law enforcement wanted to attempt another controlled buy to see if Jajuan would come to Marion, or send the CI elsewhere. The CI called Jajuan in an attempt to purchase another ounce of fentanyl. Jajuan directed the CI to meet his "cousin" at a local drive-thru. After being searched, and provided money and surveillance equipment, the CI went to the designated location. At the drive-thru, Allen approached the CI and got into the CI's car. The CI then purchased just over 28 grams of fentanyl from Allen for $1,400.

{¶16} On August 21, 2024, the CI again contacted Jajuan seeking to purchase an ounce of fentanyl. Jajuan was not in town and he again directed the CI to meet his "cousin," Allen. The CI was directed to meet Allen in an alley in Marion. The CI was also told that the ounce was more potent, so it was $65 per gram, or $1820 for the ounce. The CI was searched, provided with documented buy money and

surveillance equipment, then she drove to the designated area. She again met Allen and exchanged $1,820 for just over 28 grams of fentanyl.

{¶17} Allen was arrested only a couple of days after the final controlled buy. When he was arrested, he was in possession of $1,720 that had been used in the most recent drug purchase.

{¶18} Portions of the transactions were recorded through police surveillance and some portion of the later transactions were pulled from cameras at a local drive-thru. There were also some audio recordings introduced into evidence, in addition to still photographs identifying Allen.

Analysis

{¶19} Allen argues that the evidence presented was insufficient to convict him. First he argues that the State failed to present evidence of an ongoing enterprise as required by R.C. 2923.31(C) for a conviction of Engaging in a Pattern of Corrupt Activity. He argues that the enterprise must be "a continuing unit that functions with a common purpose." *State v. Beverly*, 2015-Ohio-219, ¶ 9. Allen contends that the evidence only showed "ad hoc" drug transactions, not a structured entity or association.

{¶20} Allen mischaracterizes the evidence and also ignores our standard on sufficiency, which requires us to look at the evidence in a light most favorable to the State. Here, there was clearly a connection between Jajuan and Allen and the

evidence established that they were involved in an ongoing drug business. Allen was present during the first drug transaction and it was indicated he was the person to seek methamphetamines from. For the second and third transactions, the CI called Jajuan but was directed to meet with Allen, showing that Jajuan and Allen worked together for the common purpose of selling drugs even when Jajuan was not in Ohio.

{¶21} Importantly, an enterprise can be as small as a sole-proprietorship or a partnership. R.C. 2923.31(C). Further, a "pattern of corrupt activity" involves two or more incidents of corrupt activity. *State v. Thomas*, 2025-Ohio-1321, ¶ 22. Here there were three separate drug transactions. When looking at the evidence in the light most favorable to the state as we are directed, we find that there was sufficient evidence presented to convict Allen of Engaging in a Pattern of Corrupt Activity.

{¶22} As to the trafficking charges, there was clear evidence detailing the second and third transactions between the CI and Allen. While Allen might argue that for the first transaction he was merely "present," the jury was instructed on "complicity." When evaluating the evidence in the light most favorable to the State, we find there is sufficient evidence to establish that Allen was complicit in the first drug sale.[2]

---

[2] Allen's convictions for Possession of a Fentanyl-related compound were merged for purposes of sentencing with the Trafficking convictions. However, if we were to review these Possession convictions, they too were supported by sufficient evidence.

{¶23} Allen also argues that the evidence against him was insufficient because the CI was not credible, but this is an issue for weight of the evidence rather than sufficiency. The testimony of the CI, the exhibits entered into the record including photographs and audio or visual recordings linking Allen and Jajuan to the sales, and the testimony of the officers were all sufficient to establish the elements of the events beyond a reasonable doubt. For all of these reasons, Allen's first assignment of error is overruled.

*Second Assignment of Error*

{¶24} In his second assignment of error, Allen argues that even if there was sufficient evidence presented to convict him, his convictions were against the manifest weight of the evidence.

Standard of Review

{¶25} In determining whether a conviction is against the manifest weight of the evidence, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn

the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

Analysis

**{¶26}** In his second assignment of error, Allen argues that even if there was sufficient evidence presented to convict him, his convictions were against the manifest weight of the evidence. Specifically, he argues that the jury's verdicts depended almost entirely on the credibility of the CI, and he contends that the CI was inconsistent and had reasons to be untruthful.

**{¶27}** The CI's credibility was a major issue in the trial. The CI indicated that she had a prior conviction for drug possession and that she had a prior agreement with MARMET as a CI that she did not successfully fulfill. In fact, the prior CI agreement was violated when the CI's house was raided and the CI's paramour was arrested for drug trafficking. After this incident, the CI agreed to a new deal with MARMET to lessen any potential prison term she was facing from her house being raided.

**{¶28}** Still, law enforcement officers testified that CIs often have questionable pasts, which is precisely why they make good CIs. Here, law enforcement thoroughly searched the CI both before and after the drug buys and they found nothing on her person to taint the "controlled" nature of the drug buys. The CI was provided with audio/visual recording equipment, although the video

recording was not functioning properly during the second and third transactions. Regardless, officers listened to the CIs conversations and followed her to the scenes of the transactions to directly observe as much as they could (and to provide security).

{¶29} While Allen asserts on appeal that the CI lacked credibility, the jury's apparent decision to believe the testimony of the informant does not indicate that the jury clearly lost its way. The jury was able to see, hear, and evaluate the testimony and the jury was free to believe or disbelieve any or all of that testimony. *State v. Williams*, 2024-Ohio-2307, ¶ 27 (3d Dist.), citing *State v. Shockey*, 2024-Ohio-296, ¶ 24 (3d Dist.). A verdict is not against the manifest weight of the evidence just because the jury chose to believe the state's witnesses rather than the defense's version of the events. *State v. Hooper*, 2022-Ohio-2990, ¶ 29 (3d Dist.).

{¶30} At the very least, we do not find that this is one of the exceptional cases involving a manifest miscarriage of justice. Therefore, Allen's second assignment of error is overruled.

*Third Assignment of Error*

{¶31} In his third assignment of error, Allen argues that the trial court erred by imposing a "de facto" forfeiture of $9,118.31 that was seized at the time of Allen's arrest.

Relevant Authority

**{¶32}** Proceeds from the commission of an offense are subject to forfeiture to the State. R.C. 2981.02(A)(1)(b). The State may seize the property only if the defendant is convicted of an offense and the indictment charging the offense contains a specification of forfeiture. R.C. 2981.04. "The trier of fact shall determine whether the property is subject to forfeiture." R.C. 2941.1417(B). In a criminal action, the defendant has the right to have the forfeiture specification determined by the jury. R.C. 2981.08(A).

**{¶33}** Generally, forfeitures are not favored in law and the forfeiture statues are to be interpreted strictly against the State. *State v. Abston*, 2022-Ohio-884, ¶ 40 (3d Dist.). "Proceeds" are defined as "any property derived directly or indirectly from an offense" and may include money from drug transactions. *Id.* at ¶ 39 and R.C. 2981.01(B)(11)(a). "However, in order for such 'proceeds' to be forfeited, a defendant has to be convicted of a crime *and* a forfeiture specification 'of the type described in [R.C. 2941.1417]' has to be included in the indictment." *Abston* at ¶ 39. The failure to obtain a judgment from the trier of fact indicating the property to be forfeited means the statutory procedures were not followed and the forfeiture is contrary to law. *State v. Harbut*, 2024-Ohio-4811, ¶ 69 (2d Dist.).

Analysis

**{¶34}** Allen argues that since the jury never determined that his seized money was subject to forfeiture, the trial court erred by ordering it to be forfeited. The indictment in this case originally contained forfeiture specifications attached to all counts, seeking forfeiture of $9,118.31 that was allegedly contraband and/or proceeds of the offenses. However, the State dismissed all of the forfeiture specifications prior to the case being submitted to the jury.

**{¶35}** Nevertheless, despite the dismissal of the forfeiture specifications, the trial court ordered that the money seized at the time of Allen's arrest should be "forfeit" and applied to Allen's fine. (June 24, 2025, Tr. at 20). We have held in these exact circumstances, in Allen's co-defendant's case actually, that the trial court erred by ordering the de facto forfeiture of seized funds. *State v. Allen*, 2025-Ohio-5785, ¶ 3-6 (3d Dist.). As the trial court has made the same error in this case, we sustain Allen's third assignment of error.

*Fourth Assignment of Error*

**{¶36}** In his fourth assignment of error, Allen argues that the trial court erred by assessing a mandatory fine against Allen even though he had filed the proper affidavits establishing indigence prior to sentencing. Mandatory fines are appropriate for anyone convicted for a first, second or third degree felony violation of Revised Code Chapter 2925.

> For a first, second, or third degree felony violation of any provision of Chapter 2925, 3719, or 4729 of the Revised Code, the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section. If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.

R.C. 2929.18(B)(1).

**{¶37}** A mandatory fine is a criminal sanction that must be imposed unless two conditions are met: 1) the offender files an affidavit of indigency; and 2) the trial court determines that the offender is indigent. *State v. Moore*, 2012-Ohio-5479, 135 Ohio St. 3d 151. If these conditions are met, the trial court shall not impose the mandatory fine upon the offender. *Id.* at ¶ 13. "The trial court lacks discretion to impose the fine if the conditions are met or to not impose the fine if they are not met." *Allen*, 2025-Ohio-5785, ¶ 7 (3d Dist.), citing *Id.* If a defendant files an affidavit of indigency, the trial court "must consider the defendant's present and future ability to pay the amount of the sanction or fine." *State v. Gamble*, 2018-Ohio-895, ¶ 23 (3d Dist.). While the trial court is not required to make specific findings, the record must show that the trial court considered the defendant's ability to pay before imposing the fine. *Id.*

**{¶38}** Here, there is no question that Allen filed the appropriate affidavit of indigency. With regard to the fine, the court stated,

> Defendant's subject to a mandatory fine. The Court is going to impose a mandatory $10,000 fine on Count 2 of the indictment. The Court will forfeit $9,118.31 to that fine. There will be no other fines on the other counts due to the affidavit of indigency being filed.

(June 24, 2025, Tr. at 20).

**{¶39}** Again, the trial court made essentially these exact same statements at Allen's co-defendant's sentencing hearing, and we determined that the trial court erred by failing to determine if the defendant was indigent for purposes of a mandatory fine, "which required the trial court to consider Allen's present and future ability to pay the fine." *State v. Allen*, 2025-Ohio-5785, ¶ 8 (3d Dist.). In reaching this conclusion, we held:

> If the trial court determined that Allen lacked the present and future ability to pay the fine, the trial court could not impose the mandatory fine pursuant to R.C. 2929.18(B)(1). However, if the trial court found Allen had the ability to pay the fine, the trial court was required to impose the mandatory fine despite the filing of the affidavit of indigency.
>
> A review of the record does not support that the trial court clearly determined Allen's ability to pay the fine. The trial court imposed the mandatory fine, which indicates that the trial court did not find Allen to be indigent for the purpose of paying the fine. However, the trial court then proceeded to say that Allen filed the required affidavit of indigency and lacked the ability to pay the fines. As a result, the trial court made contradictory statements. A defendant cannot both be ordered to pay mandatory fines from his seized funds and simultaneously have fines waived due to indigency. Since at this point

there are no forfeiture proceedings that comply with R.C. 2981 before this court, this matter must be remanded for the trial court to determine whether Allen is indigent for the purpose of paying any fines as part of his sentence.

*Id*. at ¶ 8-9.

**{¶40}** Applying *Allen* to this case, we are compelled to reverse and remand for the trial court to determine whether Allen is indigent for the purpose of paying any fines in this case. Therefore Allen's fourth assignment of error is sustained.

*Fifth Assignment of Error*

**{¶41}** In his fifth assignment of error, Allen argues that the trial court erred by imposing consecutive sentences in this case. Specifically, he contends that the trial court failed to make one of the required findings pursuant to R.C. 2929.14(C)(4) before imposing consecutive sentences.

Controlling Authority

**{¶42}** The imposition of consecutive sentences is controlled by R.C. 2929.14(C)(4), which reads as follows:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶43} Based on the statute, in order to impose consecutive sentences, a trial court must make three findings: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *State v. Nienberg*, 2017-Ohio-2920, ¶ 17 (3d Dist.). The failure to make all three findings at the sentencing hearing and in the journal entry is reversible error. *State v. Bonnell*, 2014-Ohio-3177.

Analysis

{¶44} Allen contends that the trial court failed to make one of the required R.C. 2929.14(C)(4) findings at the sentencing hearing. Specifically, he contends that

the trial court failed to make the finding that consecutive terms were "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." However, Allen concedes that the trial court made all of the remaining findings at the sentencing hearing. Further, he concedes that the trial court made all the appropriate findings in its judgment entry. Thus we focus our review on what was stated at the sentencing hearing to see if the trial court satisfied its duty to make findings.

{¶45} At the sentencing hearing, the trial court stated as follows with respect to consecutive sentences.

> Court further finds that consecutive sentences are necessary to protect the public from future crime by the offender. And the Court also finds that the offender's criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender, his criminal history's extensive, particularly in drugs. Court also finds that he was on community control sanctions at the time that he committed this offense.

(Tr. at 20).

{¶46} The trial court did not specifically make the second finding required to impose consecutive sentences at the sentencing hearing. It did not explicitly indicate that "the sentences would not be disproportionate to the offense committed." We found the same deficiency existed in Allen's co-defendant's case. *Allen*, *supra*, at ¶ 12. The failure to make one of the required findings is reversible

error. *Id*. Therefore we sustain Allen's fifth assignment of error and remand for a new sentencing hearing consistent with this opinion.

*Conclusion*

{¶47} Having sustained three of the five assignments of error, this case is affirmed in part, and reversed in part. Allen's convictions are supported by the record but a new sentencing hearing is required consistent with this opinion.

***Judgment Affirmed in Part, Reversed in Part, Cause Remanded***

**MIILER, and WILLAMOWSKI, J. J., concur.**

# __JUDGMENT ENTRY__

For the reasons stated in the opinion of this Court, it is the judgment and order of this Court that the judgment of the trial court is affirmed in part and reversed in part with costs assessed equally between Appellant and Appellee for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

 

Juergen A. Waldick, Judge

 

Mark C. Miller, Judge

 

John R. Willamowski, Judge

DATED:
/jlm